**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BOLLENBACH ENTERPRISES LIMITED PARTNERSHIP, on behalf of itself and all others similarly situated, | |
| Plaintiff, | Case No. 5:17-CV-00134-HE |
| vs. | |
| OKLAHOMA ENERGY ACQUISITIONS LP; ALTA MESA SERVICES, LP; and ALTA MESA HOLDINGS, LP (including affiliated predecessors and affiliated successors), | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR PRELIMINARY CERTIFICATION
OF SETTLEMENT CLASS AND APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND OPENING BRIEF IN SUPPORT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I. Issues Presented ........................................................................... 1

II. Background Facts ........................................................................ 2

III. Applicable Law and Argument ................................................... 3

A. Certification of a Class Action ............................................. 3

1. Class Definition ............................................................. 3

2. Elements of Rule 23(a) ................................................. 5

i. Numerosity ............................................................. 5

ii. Commonality ........................................................... 6

iii. Typicality ................................................................ 9

iv. Adequacy of Representation .................................. 10

3. Elements of Rule 23(b)(3) ........................................... 11

i. Predominance ........................................................ 11

ii. Superiority .............................................................. 14

B. Preliminary Approval of Proposed Settlement ................... 17

1. Settlement Agreement Terms ....................................... 18

2. No Obvious Deficiencies, No Preferential Treatment and Within the Range of Possible Approval ................... 19

3. Fairly and Honestly Negotiated ................................... 19

4. Serious Questions of Law and Fact .............................. 20

5. Immediate Recovery Versus Protracted Litigation ....... 21

i

6.   Judgment of the Parties .......................................................................... 21

IV.   The Proposed Notice to the Class is Appropriate and Complies with All
Applicable Law ....................................................................................................... 22

V.   A Fairness Hearing Should be Scheduled ............................................................ 23

VI.   Conclusion ........................................................................................................... 23

CERTIFICATE OF SERVICE ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adamson v. Bowen,*
    855 F.2d 668 (10th Cir. 1988) ........................................................................9

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).................................3, 12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
    568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)..................................... 12, 13

*Anderson v. City of Albuquerque,*
    690 F.2d 796 (10th Cir.1982) ........................................................................3

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001).........................................................................11

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008) .....................................................................................12

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) .........................................17

*CGC Holding Co., LLC v. Broad & Cassel,*
    773 F.3d 1076 (10th Cir. 2014) ..........................................................11, 12, 16

*Chieftain Royalty Co. v. QEP Energy Co.,*
    281 F.R.D. 499 (W.D. Okla. 2012)...............................................................7

*Childs v. Unified Life Ins. Co.,*
    10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ............................. passim

*Davoll v. Webb,*
    160 F.R.D. 142 (D.Colo.1995) .....................................................................4

*DeJulius v. New England Health Care Employees Pension Fund,*
    429 F.3d 935 (10th Cir.2005) ......................................................................22

*Digital Design Group, Inc. v. Information Builders, Inc.,*
    24 P.3d 834 (Okla. 2001) ............................................................................13

*E. Texas Motor Freight Sys. Inc. v. Rodriguez,*
    431 U.S. 395, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977)....................................9

*Eatinger v. BP Am. Prod. Co.,*
   No. 07-1266-EFM (D. Kan. Sept. 17, 2012) ..........................................................10, 21, 23

*Edgington v. R.G. Dickinson and Co.,*
   139 F.R.D. 183 (D. Kan. 1991) ...................................................................................9

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ........................................................3

*Fitzgerald Farms, Inc. v. Chesapeake Operating Co.,*
   No. CJ-10-38 (Dist. Ct. Beaver County, Okla. 2015) .......................................................10

*Freebird, Inc. v. Merit Energy Co.,*
   No. 10-1154-KHV (D. Kan. Dec. 16, 2012) .............................................................10, 21

*Greghol Ltd. Partnership v. Oryx Energy Co.,*
   959 P.2d.  596 (Okla. Civ. App. 1998) .........................................................................7

*Hall Jones Oil Corp. v. Claro,*
   459 P.2d 858 (Okla. 1969) ........................................................................................6

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992)......................................................................................9

*Hill v. Kaiser-Francis Oil Co.,*
   No. CIV-09-07-R, 2010 WL 2474051 (W.D. Okla. June 9, 2010)...........................6, 13

*Hill v. Marathon Oil Co.,*
   No. CIV-08-37-R, 2010 WL  2365447 (W.D. Okla. June 9, 2010)...........................7

*Hershey v. ExxonMobil Oil Co.,*
   No. 07-1300-JTM (D. Kan. Oct. 26, 2012)..........................................................10, 21, 23

*In re Integra Realty Resources, Inc.,*
   262 F.3d 1089 (10th Cir.2001) .................................................................................22

*In re Farmers Med-Pay Litig.,*
   229 P.3d 551 (Okla. Civ. App. 2010) .........................................................................13

*In re Motor Fuel Temperature Sales Practices Litig.,*
   MDL 1840, 2012 WL 4475717 (D. Kan. Sept. 28, 2012).............................17

*In re Processed Egg Products Antitrust Litig.,*
   284 F.R.D. 278 (E.D. Pa. July 16, 2012).....................................................................23

iv

*In re Qwest Communications Intern., Inc.,*
   625 F.Supp.2d 1133 (D.Colo.2009) ...............................................................21

*In re Syngenta AG MIR Corn Litig.,*
   No. 14-MDL-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) .......................14

*In re Urethane Antitrust Litig.,*
   768 F.3d 1245 (10th Cir. 2014) ...................................................................12

*Johnson v. City of Tulsa,*
   2003 WL 24015151 (N.D.Okla.May12, 2003)................................................20

*Jones v. Nuclear Pharmacy, Inc.,*
   741 F.2d 322 (10th Cir.1984) .....................................................................17

*Joseph v. General Motors Corp.,*
   109 F.R.D. 635 (D.Colo.1986) ..................................................................3, 4

*Larson v. AT&T Mobility, LLC,*
   687 F.3d 109 (3rd Cir. 2012) ......................................................................23

*Lerner v. Haimsohn,*
   126 F.R.D. 64 (D. Colo. 1989) ...................................................................11

*Lucas v. Kmart Corp.,*
   234 F.R.D. 688 (D. Colo. 2006) ..............................................................17, 21

*Malchman v. Davis,*
   706 F.2d 426 (2d Cir.1983).......................................................................20

*Marcus v. Kansas Dept. of Revenue,*
   209 F.Supp.2d 1179 (D.Kan. 2002) ............................................................21

*McKnight v. Linn Operating, Inc.,*
   No. CIV-10-30-R, 2016 WL 756541 (W.D. Okla. Feb. 25, 2016) ...........................8, 10

*Milonas v. Williams,*
   691 F.2d 931 (10th Cir. 1982), *cert denied,* 460 U.S. 1069, 103 S. Ct. 1524, 75
   L.Ed.2d 947 (1983) ..................................................................................9

*Naylor Farms, Inc. v. Anadarko OGC Co.,*
   No. CIV-08-668-R, 2009 WL 8572026 (W.D. Okla. Aug. 26, 2009).........................7

*Payson v. Capital One Home Loans, L.L.C.,*
   2008 WL 4642639 (D. Kan. Oct. 16, 2008) ...................................................14

v

*Rex v. Owens ex rel. State of Okla.,*
   585 F.2d 432 (10th Cir.1978) ...................................................................6

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ..........................................................18, 20

*Shores v. First City Bank Corp.,*
   689 P.2d 299 (Okla. 1984) ......................................................................6

*Shutts v. Phillips Petroleum Co.,*
   679 P.2d 1159 (Kan. 1984) ......................................................................6

*Smith v. MCI Telecommunications Corp.,*
   124 F.R.D. 665 (D. Kan. 1989) ..........................................................14, 16

*Stambaugh v. Kansas Dept. of Corrections,*
   151 F.R.D. 664 (D. Kan. 1993) ...............................................................6

*Torres v. S.G.E. Mgmt., L.L.C.,*
   838 F.3d 629 (5th Cir. 2016) .................................................................12

*Trevizo v. Adams,*
   455 F.3d 1155 (10th Cir.2006) .............................................................5, 6

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016).......................................................................13, 14

*United States v. State of Colorado,*
   937 F.2d 505 (10th Cir.1991) .................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ................................................................................6

*Wilkerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D.Colo.1997) ..........................................................17, 19

*Williams v. Aramark Sports, LLC,*
   No. CIV.A. 10-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ..........................20

*Williams v. First Nat. Bank,*
   216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625(1910).......................................17

*Windham v. American Brands, Inc.,*
   565 F.2d 59, 68 (4th Cir.1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1605,
   56 L.Ed.2d 58 (1978) .............................................................................16

STATUTES

Fed. R. Civ. P. 23........................................................................................................*passim*

OTHER AUTHORITIES

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 1979.1 (3d ed.2005)................................................................................. 19

OUJI-CIV 26.1 ............................................................................................................. 13

Plaintiff files this motion and brief in support to obtain certification of this action as a class action and preliminary approval of the proposed class action settlement so that notice of the settlement may be provided to the Class members. Attached as Exhibit "1" is the executed Settlement Agreement, as well as Exhibits A through G:

> Exhibit A (Plan of Allocation and Distribution);
>
> Exhibit B (Proposed Order Preliminarily Approving Class Settlement);
>
> Exhibit C (Proposed Order Approving Class Action Settlement and Final Judgment);
>
> Exhibit D-1 (Notice of Settlement);
>
> Exhibit D-2 (Publication Notice);
>
> Exhibit E (List of Class Wells);
>
> Exhibit F (Proposed Order on Class Certification for Settlement Purposes); and
>
> Exhibit G (List of Affiliates of Alta Mesa).

Certain of the capitalized terms in this Memorandum are defined in the Settlement Agreement.

## I.    ISSUES PRESENTED

1.    Should the Court certify this action as a class action so it can preliminarily approve the proposed class-wide Settlement and direct notice to the Class Members about the Action and Settlement so they can exercise their right to participate, object, or opt-out of the class action?

2.    Should the proposed Notice of Settlement of Class Action be approved and sent to the Class Members?

1

## II.    BACKGROUND FACTS

Plaintiff, on behalf of itself and a putative class of royalty owners, sued Alta Mesa[1] for alleged underpayment or non-payment of royalties on natural gas and/or constituents of the gas stream produced from wells in Oklahoma as more fully described in the First Amended Class Action Complaint ("FAC"). (Dkt. # 28). The FAC alleges: RICO, Breach of Lease; Breach of Fiduciary Duty; Tortious Breach of Implied Covenant; Fraud, Deceit, and Constructive Fraud.

Plaintiff alleges Alta Mesa's uniform internal revenue accounting system and royalty payment formula defrauds and underpays the owners of royalty interests in the Class Wells in the various ways as described in the FAC.

Prior to the time for Alta Mesa to file its Answer to the Complaint, the parties filed a Joint Motion to Stay the case to engage in informal discovery for settlement purposes. (Dkt. # 19). On June 13, the parties agreed to settle the case after mediation. (Dkt. # 24). Mediator Bob Gum reported the settlement to the Court. *Id*. As a result of the work done for the mediation, Plaintiff added some claims and filed the FAC mentioned above. Alta Mesa filed an Answer and denied liability to Plaintiff and the Class. (Dkt. # 29). Nothing in the parties' Settlement is intended to or shall be construed as an admission by Alta Mesa that it is liable to Plaintiff and the putative Class, as alleged or at all. Likewise, nothing in the parties' Settlement is intended to or shall be construed as an admission by Alta Mesa that this case could properly be certified as a class action if litigated on a contested basis

---

[1]  For purposes of this motion, "Alta Mesa" means all three of the entities listed in the case caption.

through a trial on the merits. Alta Mesa agrees, however, that this case should be certified

as a class action for purposes of settlement.

## III.   APPLICABLE LAW AND ARGUMENT

A sister Oklahoma federal district court has described analytical framework for

preliminary approval of a class action settlement before certification of the action as a

class action as follows:

> A certified class must satisfy the requirements of Fed.R.Civ.P. 23, even in a
> settlement context. *E.g. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619–20,
> 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Accordingly, the Court first will analyze
> the suitability of certifying this matter as class action under Rule 23. In doing so,
> "....the question is not whether the plaintiff or plaintiffs have stated a cause of
> action or will prevail on the merits, but rather whether the requirements of Rule 23
> are met." *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982)
> (quotations omitted); *see, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177,
> 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("[N]othing in either the language or history
> of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the
> merits of a suit in order to determine whether it may be maintained as a class
> action."); *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 381 (D.Colo.1993). After
> analyzing the elements of Rule 23 class certification, the Court will preliminarily
> address and discuss the overall fairness of the proposed settlement. It will then
> address the adequacy of notice the parties propose to send out.

*Childs v. Unified Life Ins. Co.*, 10-CV-23-PJC, 2011 WL 6016486, at *2 (N.D. Okla.

Dec. 2, 2011).

### A.  Certification of a Settlement Class Action

#### 1.      Class Definition

To satisfy the requirements of Rule 23(a), the class must be adequately defined so

that potential class members can be identified. *Joseph v. General Motors Corp.,* 109 F.R.D.

635, 638 (D.Colo.1986). This means that the class description must be sufficiently definite

so that it is "administratively feasible" for the Court to determine whether a particular

individual is a member. *Davoll v. Webb,* 160 F.R.D. 142, 144 (D.Colo.1995). It does not require, however, that every potential member can be identified at the beginning of the action. *Joseph,* 109 F.R.D. at 637.

Plaintiff seeks certification of the following settlement class for purposes of preliminary approval and notice:

> All persons who are or were royalty owners in Oklahoma wells which had production on or prior to June 30, 2017, where Defendants (including their affiliated predecessors and affiliated successors) are or were the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) as to production from October 1, 2014 through June 30, 2017. The Class claims relate to royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).
>
> Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) the State of Oklahoma or any of its agencies or departments that own royalty interests; (3) Defendants, their affiliates, predecessors, and employees, officers, and directors; (4) any publicly traded company and their affiliated entities that produce, gather, process, or market gas; (5) the claims of royalty owners to the extent covered by prior settlement agreements, if any, in effect at the time suit was filed herein, but only to the extent such prior settlements cover some or all of the Class Wells, Released Parties and Released Claims (the intent being that this settlement be effective as to any matters not already released by any such prior settlement agreements); (6) overriding royalty owners and others whose interest was carved out from the lessee's interest; (7) royalty owners only to the extent they take gas in-kind, if any; and, (8) royalty owners only to the extent receiving payments from third party working interest owners who took their gas in-kind from Class Wells, marketed their share of gas, and provided the royalties to Alta Mesa to distribute to royalty owners.

Ex. 1, Settlement Agreement ¶ 1.22. This definition is sufficiently definite in that it is administratively feasible to identify Class Members. Indeed, the Class Members are known and identified by mailing address so that Notice of the Settlement can be provided. Alta

Mesa has records of the royalty owners in Class Wells in which it owns a working interest and marketed gas, directly paying royalty owners; the list of Class Wells is attached as Exhibit E to the Settlement Agreement. Alta Mesa's records are maintained in electronic databases and include current and historic payment decks containing the names and addresses of the royalty owners in the Class Wells that it has paid each month during the Class Period. Alta Mesa has provided that information to Plaintiff's expert and can provide that information to the Settlement Administrator so that the Settlement Administrator can mail the Notice of Settlement and, once the Settlement becomes Final and Unappealable, the Distribution Checks, to the Class Members. Ex. 1, Settlement Agreement ¶ 3.3. Notice by direct mail is consistent with Rule 23(c)'s "best notice practicable" standard. *Childs*, 2011 WL 6016486, at *14.

### 2.  Elements of Rule 23(a)

Under Fed. R. Civ. P. 23(a), a class may be certified if four prerequisites are met: (1) Numerosity: "the class is so numerous that joinder of all members is impracticable"; (2) Commonality: "there are questions of law or fact that are common to the class"; (3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) Adequacy of representation: "the representative parties will fairly and adequately represent the interests of the class." *Trevizo v. Adams,* 455 F.3d 1155, 1161 –1162 (10th Cir.2006) (citing Rule 23(a)).

### i. Numerosity

The Tenth Circuit does not prescribe any set formula to satisfy the numerosity requirement of Rule 23(a)(1). *Trevizo,* 455 F.3d at 1162. Instead, the Court is granted "wide

latitude" in making the determination. *Id.* Plaintiffs must generally establish, however, that the class is so numerous as to make joinder impracticable. *Id.* The number of class members involved may be established by reasonable estimate, *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir.1978), and the identity of each class member or the specific number of members need not be proven. *Stambaugh v. Kansas Dept. of Corrections,* 151 F.R.D. 664, 673 (D. Kan. 1993).

Exhibit E to the Settlement Agreement lists over 100 Class Wells. Each of the Class Wells has more than one royalty owner and, in some cases, many more. There are more than 200 putative Class Members from many different states, making joinder impracticable and sufficiently establishing the numerosity requirement of Rule 23(a)(1).[2]

### ii. Commonality

"There need only be one issue of law or fact common to all class members to satisfy the element of commonality." *Hill v. Kaiser-Francis Oil Co*., No. CIV-09-07-R, 2010 WL 2474051, at *3 (W.D. Okla. June 9, 2010). Even a single common question of law <u>or</u> fact is enough.[3] *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011) ("a single [common] question will do"); *Newberg on Class Actions* (5th ed.), § 3.18 ("the commonality

---

[2] *See Hall Jones Oil Corp. v. Claro*, 459 P.2d 858 (Okla. 1969) (class certified with only 11 members); and *Shores v. First City Bank Corp.,* 689 P.2d 299, 302 (Okla. 1984) (class certified with 115 members).

[3] *Shutts v. Phillips Petroleum Co.,* 679 P.2d 1159, 1175 (Kan. 1984) ("The [commonality] requirement … is couched in the disjunctive: common question of fact *or* law. It does not, therefore, require the presence of both a common question of fact *and* a common question of law.") (citations omitted) *aff'd in part, rev'd in part and remanded,* 472 U.S. 797 (1985).

requirement is not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact … and is thus easily met in most cases.").

In royalty owner class actions such as this one, individual factual differences regarding oil and gas lease language, BTU content of gas, well location, or producing formations do not preclude a finding of commonality. *See, e.g.*, *Hill*, 2010 WL 2474051, at \*1-3; *Hill v. Marathon Oil Co.*, No. CIV-08-37-R, 2010 WL 2365447, at \*3-4 (W.D. Okla. June 9, 2010); *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. CIV-08-668-R, 2009 WL 8572026, at \*5 (W.D. Okla. Aug. 26, 2009) (concluding that "differing language of the leases is not an  impediment to certification of the class on the basis of commonality."); *Chieftain Royalty Co. v. QEP Energy Co.,* 281 F.R.D. 499, 503 (W.D. Okla. 2012).[4] This case presents no exception. The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

> 1. Common Legal Duty:
>
> > a. RICO: Are Class Members entitled to proper royalty payment; are Defendants part of a RICO Enterprise; did the RICO Enterprise defraud royalty owners by underpaying them and covering up their scheme; did the RICO Enterprise underpay royalty more than once so as to be a pattern; and did the RICO Enterprise in making monthly royalty (under)payments use the mail or electronic mail as part of the scheme?
> >
> > b. Implied and Tort Duties: Do the Class Leases and OCC Pooling Orders contain the implied duty to market; and, do the OCC

---

[4]  Oklahoma courts have also found that "individual issues created by the specific language of the conveyance  instruments do not preclude the common issue, *i.e.* whether the deductions for post-production costs are proper . . . ." *Greghol Ltd. Partnership v. Oryx Energy Co.*, 959 P.2d.  596, 599 (Okla. Civ. App. 1998).

Drilling and Spacing Orders create a fiduciary duty (before May 8, 2012)?

2.   Common Breach of Duties:

a. Is the raw gas in marketable condition at the gathering line inlet before any midstream service costs are incurred or deducted from royalties or after the midstream services are performed?

b. Did Alta Mesa pay royalty to the Class based on a starting price below what Alta Mesa's affiliates received in arm's-length transactions?

c. Did Alta Mesa pay royalty to the Class for all valuable constituents coming from their wells?

3.   Common Class-wide Damages:

a. Can damages be calculated for the deductions and non-payments on a class-wide basis?

b. Can interest be calculated?

Here, these common questions: (1) can be answered on a class-wide basis; and (2) are apt to drive the resolution of the case. *See McKnight v. Linn Operating, Inc.,* No. CIV-10-30-R, 2016 WL 756541, at *5-6 (W.D. Okla. Feb. 25, 2016). Although only one important legal or factual issue need be common, here, all of them are. Defendants' alleged conduct drives the legal issues relative to the RICO claim and objective documents of leases and OCC Orders, none of which depend on individual Class Members to present evidence, to make the legal determination. Likewise, the breach of the legal duties is common, and would necessarily depend on Defendants' own records of gas marketing contracts, monthly processing plant and remittance statements, and pay decks, as well as experts testifying about such generalized business records. Again, Class Members would have no knowledge, and would not be able to testify about, facts showing breach of the

legal duties. Finally, it is apparent from the mediation that damages can and were calculated.

To be sure, if class certification was fully contested by Defendants, Defendants contend that class certification would not be granted, and if it was, Defendants contend they would win at trial based on their evidence and expert testimony. But the Court need not reach either of those issues in this case since it has settled. The Court need only find that commonality is met for this Settlement Class.

### iii. Typicality

The purpose of the typicality requirement is to assure the interest of the named class representative aligns with the interests of the class. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the nature of the claim of the class representative and not to the specific facts from which the claim arose or the relief sought. *Id.* Factual differences will not render a claim atypical if the claim is based upon the same legal or remedial theory and arises from the same events or course of conduct. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988); *Edgington v. R.G. Dickinson and Co.,* 139 F.R.D. 183, 189 (D. Kan. 1991). Typicality requires the class representative to have the same interests and seek a remedy for the same injuries as other class members. *See, e.g.*, *E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L.Ed.2d 453 (1977). However, there is no requirement that the class representatives have circumstances identical to those of the potential class members. *See Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert denied,* 460 U.S. 1069, 103 S. Ct. 1524, 75 L.Ed.2d

947 (1983). In fact, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Id.*

Here there is no showing that the claims of Plaintiff Bollenbach Enterprises Limited Partnership are atypical of those of other royalty owners in Class Wells. Given Plaintiff's claims involve Alta Mesa's alleged common method of paying royalty, Plaintiff has the same interests and seeks a remedy for the same injuries as other royalty owner class members. So Rule 23(a)(3) is also satisfied in the context of this case where certification is sought for purposes of settlement only.

### iv. Adequacy of Representation

> Rule 23(a) requires that the named plaintiffs and their counsel will adequately represent the class. Legal adequacy is determined by the resolution of two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.

*McKnight*, 2016 WL 756541, at *6 (internal citations omitted).

Plaintiff's counsel are experienced litigators who have been appointed class counsel in a number of other royalty owner underpayment class litigation, including four (4) recent settlements. *See Hershey v. ExxonMobil Oil Co.,* No. 07-1300-JTM (D. Kan. Oct. 26, 2012); *Eatinger v. BP Am. Prod. Co.,* No. 07-1266-EFM (D. Kan. Sept. 17, 2012); *Freebird, Inc. v. Merit Energy Co.,* No. 10-1154-KHV (D. Kan. Dec. 16, 2012); *Fitzgerald Farms, Inc. v. Chesapeake Operating Co.*, No. CJ-10-38 (Dist. Ct. Beaver County, Okla. 2015). Counsel is eminently capable of conducting this matter as a class action, especially in light of the

presumption of competence and experience that applies. Class Counsel ably handled the mediation, and hired competent experts to assist.

"Generally, as long as the Plaintiff, as class representative, knows something about the case, even though they are not knowledgeable of the complaint's specific allegations, the class should be certified." *Lerner v. Haimsohn*, 126 F.R.D. 64, 67 (D. Colo. 1989). The class representatives should be able to "take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482 (5th Cir. 2001). Here, Plaintiff understands the responsibility that is owed to the absent Class Members and has been and is willing to complete the task, as demonstrated by attendance all day at the mediation where he was fully engaged. Also, there is no evidence of any conflict of interest with other class members. In order for a conflict of interest to render a named class representative inadequate, the conflict must be more than merely speculative or hypothetical. 5 James WM. Moore, Moore's Federal Practice, § 23.25[2][b][ii] (3d. ed.2005). Thus, adequacy is met.

### 3.    Elements of Rule 23(b)(3)

### i. Predominance

Under Rule 23(b)(3) (*i.e.,* an opt-out class), class certification is proper when the Court finds that common questions of law or fact predominate over questions affecting only individual members and that a class action is superior to other methods of adjudication.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *CGC Holding Co., LLC*

*v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 622–23 (1997)). In making this assessment, courts are to consider

the elements of the underlying cause of action. *In re Urethane Antitrust Litig.*, 768 F.3d

1245, 1255 (10th Cir. 2014).

Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that

each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does

require is that common questions '*predominate* over any questions affecting only

individual [class] members.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568

U.S. 455, 469 (2013) (emphasis in original) (quoting Rule 23(b)(3)); *see also Urethane*,

768 F.3d at 1255 ("Class-wide proof is not required for all issues. Instead, Rule 23(b)(3)

simply requires a showing that the questions common to the class predominate over

individualized questions."). On top of that, "Rule 23(b)(3) requires a showing that

*questions* common to the class predominate, not that those questions will be answered, on

the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original). That

means "[i]t is not necessary that all of the elements of the claim entail questions of fact and

law that are common to the class, nor that the answers to those common questions be

dispositive." *CGC Holding Co.*, 773 F.3d at 1087. Thus, in *CGC Holding Co.*, the Tenth

Circuit affirmed the class certification of a complex RICO fraud case despite the reality

that common law fraud claims ordinarily require individualized findings of reliance.[5] In

---

[5] RICO however does not require reliance. *See Bridge v. Phoenix Bond & Indem. Co.*, 553
U.S. 639, 647 (2008) ("RICO's text provides no basis for imposing a first-party reliance
requirement.") *see also Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 637 (5th Cir. 2016)
(en banc) (discussing *Bridge's* holding and why reliance is not required).

line with the Supreme Court's recent guidance in *Amgen*, because it was "clear that the class's claims [would] 'prevail or fail in unison,'" there was "enough to satisfy the predominance prong of Rule 23." *Id.* at 1093 (quoting *Amgen*, 133 S. Ct. at 1191).

Here, the underlying causes of action are breach of lease and breach of fiduciary duty. (Dkt. # 1-2, pp. 21-25, ¶¶ 63-87). In Oklahoma, "to prove a breach of contract, a plaintiff must prove three elements: 1) the formation of a contract; 2) a breach thereof; and 3) actual damages suffered from that breach. *Digital Design Group, Inc. v. Information Builders, Inc.,* 2001 OK 21, ¶ 33, 24 P.3d 834, 843." *In re Farmers Med-Pay Litig.*, 2010 OK CIV APP 12, 229 P.3d 551, 559 n.9 (affirming class certification). The elements of breach of fiduciary duty in Oklahoma are existence of the duty, breach, and damages directly caused thereby. Vernon's Okla. Forms 2d, OUJI-CIV 26.1 (2d ed.). All of these elements are subject to generalized proof and predominate resolution of Plaintiff's and the Class's claims. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1945 (2016) (describing a common question as a "prima facie showing" using "generalized, class-wide proof").

"Predominance is ordinarily satisfied when plaintiffs have alleged a common course of conduct by the defendant." *Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2010 WL 2474051, at *6 (W.D. Okla. June 9, 2010).  As previously stated, the principal issue is whether Alta Mesa's common method of paying royalty complies with Oklahoma law or not.

Like commonality, predominance requires common questions of law *or* fact, and, like Rule 23(a)(3), it is styled in the disjunctive. Satisfaction of either common questions

of law or common questions of fact is sufficient. And, here, both are satisfied. "[I]ndividualized issues" are issues that require individual testimony to prove them so that a representative class case does not present any efficiencies. *Tyson Foods*, 136 S. Ct. at 1045 (an individualized issue has two prongs: (1) "members of a proposed class will need to present evidence" on the issue; and, (2) the evidence presented must "var[y] from member to member."); *accord Payson v. Capital One Home Loans, L.L.C.*, 2008 WL 4642639, at *5 (D. Kan. Oct. 16, 2008) (quoting *Urethane*, 2008 WL 4210780, at *5); *see also In Urethane*, 768 F.3d 1245 (10th Cir. 2014) (same).[6] There is not a single issue that requires the individual testimony of any royalty owner. Duty is a legal issue, and liability for Alta Mesa's uniform royalty payment method will be proven (or not) based on generalized business records of Defendants and the testimony of experts. The same is true for damages. Rule 23(b)(3) predominance exists in the context of this case where certification is sought for purposes of settlement only.

### ii. Superiority

The superiority requirement of Rule 23(b)(3) compels the Court to determine whether a class action is superior to other methods of adjudicating the controversy at issue. *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 679 (D. Kan. 1989). The rule spells out four factors for the Court to consider in this inquiry. The Rule 23(b)(3) factors include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

---

[6] *In re Syngenta AG MIR Corn Litig*., No. 14-MDL-2591-JWL, 2016 WL 5371856, at *1-4 (D. Kan. Sept. 26, 2016) (following *Tyson Foods*, and since admissible, though disputed, experts can prove class-wide liability, the class should be certified). The Tenth Circuit, on a Rule 23(f) appeal, found this logic in *Syngenta* "well researched and reasoned."

litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

This case meets the standards for superiority. First, every Class Member has an interest in proving Alta Mesa's common course of wrongful conduct. It would be enormously inefficient for both the judicial system and the parties to engage in multiple trials in individual actions on the same issues. *See Hill*, 2010 WL 2474051, at *7 ("A class action 'would achieve [greater] economies of time, effort and expense, and promote [enhanced] uniformity of decisions as to persons similarly situated' than would individual actions. The superiority prong of Rule 23(b)(3) is clearly established in this case.") (internal citation omitted).

Second, the number of Class Members is too large and, the "[p]utative class members, each of whose royalty interests may be quite small, would have little incentive to prosecute their claims individually because their costs would likely exceed the value of their individual claims. Thus, class treatment is a superior option here because 'the alternatives are either no recourse for thousands ... to whom the courthouse would be out of bounds, or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *Hill*, 2010 WL 2474051, at *7 (internal citations omitted).

Third, as to manageability, there will be no difficulty in the management of this action as a settlement class action, and the Court need not consider whether it would be

manageable to try this case on the merits. There are no multi-state choice of law issues to confront, as Oklahoma law exclusively applies to all claims Plaintiff and the Class have asserted. Finally, given the ready availability of royalty payment decks, the calculation, apportionment, and distribution of settlement sums yield virtually no manageability concerns. *See Smith,* 124 F.R.D. at 677 (citing *Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978)) ("Thus, if the computation of damages following a ruling in favor of the class is a largely mechanical task, then 'the existence of individualized claims for damages seems to offer no barrier to class certification....' ")).

Ultimately, there is no feasible way for an individual royalty owner to pursue this type of case without class certification. Even if individuals could afford to bring this type of action, the costs and burdens to the Court system also would be catastrophic. And the system, the Plaintiff, and justice would suffer. "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014).

Having shown satisfaction of all Rule 23 requirements in the context of the parties' Settlement, Plaintiff asks that the Court preliminarily certify the Settlement Class and permit notice of the proposed Settlement to the Class Members to proceed.

### B.   Preliminary Approval of Proposed Settlement

> The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir.1984). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id.* In making the determination whether to approve a class action settlement, the Court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D.Colo.1997)(*citing Williams v. First Nat. Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625(1910)).

*Childs v. Unified Life Ins. Co.*, 10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011). Ultimately, the Court must determine if the settlement is "fair, adequate, and reasonable" as required by Fed. R. Civ. P. 23(e)(2). But preliminary approval requires a lesser showing because its purpose is "to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *In re Motor Fuel Temperature Sales Practices Litig.,* MDL 1840, 2012 WL 4475717, at *2-3 (D. Kan. Sept. 28, 2012). "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.,* MDL 1840, 2012 WL 4475717, at *2-3 (D. Kan. Sept. 28, 2012) (internal quotations and citation omitted).

Additionally, the Tenth Circuit has provided four non-exclusive factors to guide the Court's analysis of a proposed class action settlement:

(1)     whether the proposed settlement was fairly and honestly negotiated;

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Childs,* 2011 WL 6016486, at *11 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002)). This following sections address each factor in turn after reviewing the material terms of the proposed Settlement Agreement.

## 1.     Settlement Agreement Terms

The fully executed Settlement Agreement is attached as **Exhibit 1**, together with Exhibits A through G. Under the terms of the Settlement Agreement, Alta Mesa will pay $4,573,270 to the settle the case.[7] Ex. 1, Settlement Agreement ¶ 1.24. In return for the performance by Alta Mesa under the Settlement Agreement, the Settlement Class Members will agree to release all Released Claims in the Settlement Agreement, which include any claims for underpayment of Royalties that were, or could have been, asserted in this action. Ex. 1, Settlement Agreement ¶ 2.4 (defining "Claims Released").

Plaintiff will seek approval from the Court for: 1) a 35% Class Counsel fee; 2) Class Counsel litigation expenses in an amount to be determined and presented to the Court at the final settlement approval hearing; and 3) a 1.5% Class Representative fee, all to be paid from the Settlement Proceeds plus accrued interest and less any Monies Payable to Opt-

---

[7]  This amount is subject to adjustment based upon Alta Mesa's June 2017 production numbers. Ex. 1, Settlement Agreement ¶ 1.24 and Opt-Outs.

Outs. Alta Mesa takes no position with respect to the payment of fees and expenses in these amounts.

### 2. No Obvious Deficiencies, No Preferential Treatment and Within the Range of Possible Approval

The Settlement Agreement and its exhibits evince no obvious deficiencies or preferential treatment. Neither any group of Settlement Class Members nor Plaintiff receives preferential treatment. The cash payment in the Settlement Agreement of $4,573,270 compares favorably to the Plaintiff Class's estimated total possible recovery for the Class. The total amount represents a substantial class-wide recovery as shown by the Plan of Allocation. *See Childs,* 2011 WL 6016486, at * 12 (granting preliminary approval to a settlement that would distribute 30-50% of insurance premiums actually paid to class members).

The settlement process was thorough, fair, and arm's length and the settlement amount to be fair, adequate, and reasonable for purposes of preliminary approval. Although the fairness, reasonableness and adequacy of Settlement will be determined at the Fairness Hearing, the Settlement appears, at this juncture, to be within the "range of possible approval" and presents no reason why preliminary approval should not be granted.

### 3. Fairly and Honestly Negotiated

The Court is concerned with the protection of class members whose rights may not have been given "adequate consideration during the settlement negotiations." *Wilkerson,* 171 F.R.D. at 283; *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1979.1 (3d ed.2005). The Court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. State of Colorado,* 937 F.2d 505, 509 (10th Cir.1991). The fairness of the negotiating process is to be examined "'in light of the

experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Johnson v. City of Tulsa,* 2003 WL 24015151, at *7 (N.D.Okla.May12, 2003) (*quoting Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983)).

*Childs,* 2011 WL 6016486, at * 12.

The Settlement Agreement is the product of good faith, adversarial, arm's-length negotiations between experienced counsel. The legal issues were fully presented, not only for the mediator's benefit, but also for the parties' respective evaluation of liability and damages. Damages estimates were calculated and re-calculated based upon information that was discovered, contested, and honed. With the assistance of Mr. Gum, the parties fully educated themselves on the strengths, weaknesses, and possible damages in the case.

Where settlement results from arm's-length negotiations, "courts have given considerable weight to the views of experienced counsel as to the merits of a settlement." *Williams v. Aramark Sports, LLC,* CIV.A. 10-1044, 2011 WL 4018205, at * 7, n.7 (E.D. Pa. Sept. 9, 2011). So should it be here where the mediator, the parties' counsel, and the parties are convinced that the Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class. *See, e.g.*, *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Childs*, 2011 WL 6016486, at * 13.

### 4.   Serious Questions of Law and Fact

There can be no real debate about whether serious questions of law and fact exist in this case. Liability and class certification are complicated issues given the recent split of opinion in this Court. "The presence of such doubt tips the balance in favor of settlement because "settlement creates a certainty of some recovery, and eliminates doubt, meaning

the possibility of no recovery after long and expensive litigation.'" *Childs*, 2011 WL

6016486, at * 13 (quoting *In re Qwest Communications Intern., Inc.,* 625 F.Supp.2d 1133,

1138 (D.Colo.2009)).

### 5.    Immediate Recovery Versus Protracted Litigation

As this Court is likely aware from its experience with royalty owner class actions,

the likelihood is great that, without a settlement, the parties faced many years of protracted

litigation both in this Court and the appellate courts. In the face of these circumstances, the

prospect of immediate recovery also strongly favors preliminary approval. *See Childs*,

2011 WL 6016486, at * 13.

### 6.    Judgment of the Parties

"Counsels' judgment as to the fairness of the agreement is entitled to considerable

weight." *Childs*, 2011 WL 6016486, at *14 (quoting *Lucas v. Kmart Corp.,* 234 F.R.D.

688, 695 (D.Colo.2006)) and citing *Marcus v. Kansas Dept. of Revenue,* 209 F.Supp.2d

1179, 1183 (D. Kan. 2002)). Plaintiff's counsel has substantial experience with the

settlement of royalty owner underpayment class actions, having settled such approved class

settlements in: *Eatinger v. BP Am. Prod. Co.,* No. 07-1266-EFM (D. Kan. Sept. 17, 2012)

(Dkt. Nos. 374 & 377) (approximately $19 million cash settlement finally approved);

*Hershey v. ExxonMobil Oil Co.,* No. 07-1300-JTM (D. Kan. Oct. 23, 2012) (Dkt. Nos. 398 &

408) (approximately $60 million total settlement finally approved); and *Freebird, Inc. v.*

*Merit Energy, Inc.,* No. 10-1154-KHV (D. Kan. Mar. 19, 2013) (Dkt. #206) (approximately

$8 million cash settlement finally approved). Alta Mesa's counsel also has experience in

class actions, having handled class actions for the defense for years and having settled

some. Preliminary approval is warranted.

## IV. THE PROPOSED NOTICE TO THE CLASS IS APPROPRIATE AND COMPLIES WITH ALL APPLICABLE LAW

> "Under Fed.R.Civ.P. 23(e)(1)(B), a district court approving a class action settlement 'must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.' "*DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943 (10th Cir.2005). "In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement." *Id.* at 943–44. Generally, the Court must direct to class members the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.,* 262 F.3d 1089, 1110 (10th Cir.2001).

*Childs,* 2011 WL 6016486, at * 14.

As in *Childs,* the parties here have submitted a proposed notice plan and form of notice

as exhibits to the Settlement Agreement. The proposed Settlement Notice (Exhibit D-1)

informs the Settlement Class Members of the terms of the Settlement Agreement (and where

to get a full copy if desired), Class Counsel's request for an incentive award, expenses and a

fee not to exceed one third of the Settlement Proceeds, and all other amounts that may, if

approved by the Court, be paid out of the Common Fund Settlement Proceeds, as well as all

other information believed to be necessary to comply with the law and provide adequate notice

to the Class. The Notice also advises the Class Members of their right to opt out or to appear

in the action and to have counsel of their own choice, as well as the requirements if they desire

to object. The Settlement Agreement provides for the Settlement Administrator to mail the

Notice and list of wells attached as Exhibit E to the Settlement Agreement to the royalty

owners within the Settlement Class. Notice by first-class mail meets the requirements of due process. *Larson v. AT&T Mobility, LLC,* 687 F.3d 109, 123-31 (3rd Cir. 2012) (Rule 23(c)(2) requires individual notice where reasonably possible); *In re Processed Egg Products Antitrust Litig.,* 284 F.R.D. 278, 297 (E.D. Pa. July 16, 2012) (citing *Larson* in finding the mailing of notice to potential class members based on information provided by defendants sufficient to satisfy Rule 23(c)(2)).

## V.      A FAIRNESS HEARING SHOULD BE SCHEDULED

Rule 23(e)(2) requires the Court to hold a hearing before determining if the Settlement Agreement will be approved. In order for notice of the hearing to be provided to the Class in the Settlement Notice, the parties must obtain a hearing date from the Court. Accordingly, if the Court preliminarily approves the Settlement, Plaintiff requests that the Court set a date in February 2018 as the date and time for the Fairness Hearing.

The two most recent fairness hearings for royalty underpayment class actions in federal district court took approximately 2 hours or less because evidence was submitted prior to the hearing. *See Eatinger v. BP Am. Prod. Co.,* No. 07-1266-EFM (D. Kan. Sept. 17, 2012) (Dkt. Nos. 374 & 377); *Hershey v. ExxonMobil Oil Co.,* No. 07-1300-JTM (D. Kan. Oct. 23, 2012) (Dkt. Nos. 398 & 408). The parties similarly expect to present a full written record in support of the Settlement so the Court can consider the evidence before the Fairness Hearing.

## VI.     CONCLUSION

This motion for preliminary approval should be granted and the Court should enter the accompanying proposed order.

Respectfully Submitted,


  /s/ Rex A. Sharp
REX A. SHARP
OBA No. 011990
Rex. A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com

REAGAN E. BRADFORD
OBA No. 22072
W. MARK LANIER
Texas State Bar No. 11934600
The Lanier Law Firm
*Houston Office*:
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200

*Oklahoma Office*:
100 E. California Avenue, Suite 200
Oklahoma City, OK 73104
WML@LanierLawFirm.com
Reagan.Bradford@LanierLawFirm.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October 2017, a true and correct copy of the foregoing document was delivered via the ECF system to the following counsel of record:

L. Vance Brown
Eric L. Huddleston
Wyatt D. Swinford
ELIAS, BOOKS, BROWN&NELSON, P.C.
Two Leadership Square
211 N. Robinson, Suite 1300
Oklahoma City, Oklahoma 73102
Telephone: 405-232-3722
Facsimile: 405-232-3746
vbrown@eliasbooks.com
ehuddleston@eliasbooks.com
wswinford@eliasbooks.com

-And-

Mark D. Christiansen, OBA #1675
MCAFEE&TAFT, A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 N. Robinson Ave.
Oklahoma City, Oklahoma 73102
Telephone: 405-552-2235
Facsimile: 405-228-7435
mark.christiansen@mcafeetaft.com

       /s/ Rex A. Sharp
      REX A. SHARP